[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Tarence E. Edwards, appeals from the judgment of the Lake County Court of Common Pleas entered upon a jury verdict finding him guilty of aggravated robbery and aggravated burglary, with a gun specification.
Appellant's convictions stem from an incident that occurred in apartment B-7 of the Kensington apartments, on April 24, 2000. Testimony was presented that, on the evening in question, Kelly Dean Hall ("Hall") was approached by Josh Finnemore ("Finnemore"), an acquaintance, and appellant, whom he did not know, as he drove from the parking lot of the Kentucky Fried Chicken in Painesville. Hall consented to Finnemore's request for a ride. After driving to several locations in the city of Painesville, Finnemore and appellant recognized someone they knew sitting in a vehicle stopped at a BP station. At his guests' request, Hall turned around and followed the other vehicle as it left the BP station; however, he told them that he would only take them as far as the Kensington apartment complex, where he had an appointment with a work associate.
Coincidentally, the driver of the other vehicle, John Pringle ("Pringle"), pulled into the parking lot of the Kensington apartment complex. At his guests' request, Hall pulled past Pringle's parked vehicle, parked his car, and then went to the apartment of his work associate. After waiting a few minutes for his associate to answer the door, Hall returned to his car. Finding no one in the car, Hall pulled out and began to leave. However, as Hall exited the parking lot, Finnemore and appellant departed from the apartment building. Hall stopped, allowed them to enter the car, and drove toward appellant's house.
The testimony presented at trial reveals that while Hall was outside the apartment of his work associate, Finnemore and appellant had forcefully entered apartment B-7. At the time of the incident, James Hennessey, Sr., Ruth Jacobs ("Jacobs"), and four children, including James Frederick Hennessey, Jr. ("Hennessey, Jr.") resided in apartment B-7. On the evening of April 24, 2000, approximately eight people were in the apartment. Four of these persons testified at trial, to wit: Hennessey, Jr., Jacobs, Trina Swaney ("Swaney"), and Kevin Dale Hutchins ("Hutchins"). The state called co-defendant Finnemore, who previously had pleaded guilty for his role in the incidents, but Finnemore refused to testify and was held in contempt.
Hennessey, Jr, Jacobs, Swaney, and Hutchins testified that, in response to a knock at the front door of the apartment, Pringle went to the door and opened it slightly to determine who was outside. As he did so, appellant and Finnemore pushed the door open and entered the apartment, without invitation.
Hennessey, Jr. testified that while Finnemore waived his handgun and ordered everyone to empty their pockets, appellant remained within a few feet of the door. He further attested that after his brother, Stanley Brown ("Brown"), ran out the back door to call the police, both Finnemore and appellant ran out the back door after Brown.
Jacobs testified that, upon gaining access to the apartment, both men told everyone to empty their pockets and get on the floor; however, she did not see a gun. Jacobs testified that she sneaked past appellant, who was standing near the door, and exited through the front doorway of the apartment and that appellant immediately followed her, grabbed her, threw her up against a car, and held her there for less than two or three minutes. Jacobs had no knowledge of appellant's actions following her release. She testified that she later learned that Brown had escaped out the back door and alerted police. On cross-examination, appellant's counsel impeached Jacobs with her statement to the police that she saw the handle of a gun and that the gun she was shown at the police station "looked exactly like the one that the two males had."
Swaney also testified that Finnemore and appellant entered the apartment and demanded money; however, appellant stayed within a few feet of the doorway and only Finnemore brandished a gun.
Hutchins attested that, after the two men entered the apartment, he heard Finnemore and another voice saying: "Empty your pockets." While Hutchins was unsure if the other voice was appellant's, he testified that only Finnemore and appellant had entered the apartment. Hutchins further attested that he could not remember appellant doing anything more than standing inside the apartment, near the doorway. When asked if appellant seemed surprised to see the gun, he responded, "No. I don't believe he would have been surprised, you know. They came in together."
As stated supra, after leaving the apartment building, Finnemore and appellant got into Hall's car and the three traveled towards appellant's home. As they drove past the North End Bar, appellant and Finnemore recognized a woman, Kimberly Sarkozy ("Sarkozy"), in the bar's parking lot and asked Hall to turn around. Hall did so.
After pulling into the bar parking lot, appellant and Finnemore exchanged words with Sarkozy. A man named Donnie Jackson ("Jackson") walked towards the car to help Sarkozy. Sarkozy testified that Finnemore, who was sitting in the vehicle behind the driver, hit Jackson in the face. She then approached the passenger side of the vehicle and flicked her lit cigarette at Finnemore. Sarkozy testified that she heard a door begin to open and thought one of the men was going to exit the vehicle. As she stepped away from the car, she heard a gun shot, saw a spark from the back seat, and was struck in the thigh by a bullet. After the gunshot, Hall drove towards Mentor. The Mentor police pulled the three men over and all were taken into custody.
As a result of these incidents, appellant was indicted on the following four counts: (1) attempted murder, in violation of R.C. 2903.02, a felony of the first degree, with firearm specifications pursuant to R.C. 2941.145
and 2941.146; (2) felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree, with firearm specifications pursuant to R.C. 2941.145 and 2941.146; (3) aggravated robbery, in violation of R.C.2911.01(A)(1), a felony of the first degree, with a firearm specification pursuant to R.C. 2941.145; and, (4) aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree, with a firearm specifications pursuant to R.C. 2941.145. Appellant pleaded not guilty.
A jury trial commenced on October 3, 2000. At the outset of the trial, the attempted murder charge and the accompanying gun specifications were dismissed and the remaining counts renumbered. At trial, the state presented the testimony of fifteen witnesses, including four of the victims. At the close of the state's case, the defense moved for acquittal pursuant to Crim.R 29, which was denied. The defense rested without calling any witnesses.
On October 6, 2000, appellant was convicted of aggravated robbery and aggravated burglary, with the accompanying gun specifications, but was acquitted of felonious assault. On December 1, 2000, appellant was sentenced to serve three years imprisonment on each of the aggravated robbery and aggravated burglary counts, to be served concurrently, with credit for two hundred twenty-two days already served. Additionally, pursuant to R.C. 2929.14(D)(1)(a)(iii), appellant was sentenced to the mandatory three years imprisonment for the firearm specifications, to be served prior to and consecutive to the previously stated sentence. Pursuant to R.C. 2929.14(D)(1)(b), the court imposed only one prison term for the gun specifications because both felonies were committed as part of the same act or transaction.
From this judgment and sentence, appellant appeals, raising the following assignment of error:
 "[1.] The trial court erred to the prejudice of the defendant-appellant in failing to give the jury instruction on the affirmative defense of abandonment.
Appellant contends, in his sole assignment of error, that the court erred when it refused to give the proposed abandonment jury instruction, made pursuant to R.C. 2923.02(E), which provides: "[i]t is an affirmative defense to a charge [of complicity] that, prior to the commission of or attempt to commit the offense, the actor terminated his complicity, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." Appellant argues that the record contains evidence which supports the contention that appellant had no prior knowledge that Finnemore possessed a firearm and had no intention of committing any offense with a firearm.
In opposition, the state argues that the trial court properly refused to instruct on abandonment because the record is devoid of any evidence that appellant, whose convictions were predicated upon a theory of complicity, repudiated Finnemore's criminal intent of brandishing a handgun and committing aggravated burglary and aggravated robbery. We agree.
"A charge of complicity may be stated in terms of [complicity], or in terms of the principal offense." R.C 2923.03(F). The affirmative defense of abandonment is set forth in R.C. 2923.03(E), supra. "In applying the foregoing provision, the courts of this state have held that the defendant's repudiation of criminal intent must be unequivocal before an instruction on abandonment will be warranted." State v. Brumley (Mar. 29, 1996), 11th Dist. Nos. 89-P-2092 89-P-2099, 1996 Ohio App. LEXIS 1390, at *100.
"After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. (Crim. R. 30[A], construed.)" State v. Comen (1990), 50 Ohio St.3d 206,210. Additionally, in a criminal case a trial court errs by failing to give a proposed jury instruction when: (1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the applicable law; and (3) the instruction is not covered in the general charge to the jury. See e.g., Mentor v. Hamercheck (1996),112 Ohio App.3d 291, 296.
In the instant case, appellant's argument is predicated on the undisputed fact that Finnemore, not appellant, brandished a gun at the Kensington apartment. He argues that the record is devoid of any evidence that he knew Finnemore possessed a gun prior to his brandishing it in the Kensington apartment. Further, appellant argues that the record contains testimony to support the argument that he was silent inside the Kensington apartment and that he ran out of the apartment when Finnermore brandished the gun.
Each of the eyewitnesses testified that, while Finnemore was demanding money, appellant was inside the apartment, albeit just a few feet from the doorway. Hennessey, Jr. Swaney, and Hutchins further testified that appellant remained inside the apartment while Finnemore brandished his gun. In addition, Jacobs testified that appellant only left the apartment after she sneaked past him and exited the apartment. She attested that appellant immediately followed behind her, grabbed her, and detained her for a minute or two. The record is devoid of any evidence that appellant was unaware that Finnemore possessed a gun or that he fled upon seeing it. In fact, Hutchins testified that appellant did not seem surprised to see the gun.
Hennessey, Jr., testified that Finnemore demanded money; however, two of the witnesses, Jacobs and Swaney, testified that Finnermore demanded money and appellant also demanded that everyone empty their pockets. Hutchins testified that he heard two voices demanding money and that only Finnemore and appellant had entered the apartment, implying that appellant also demanded money.
Based on the testimony presented at trial, we cannot conclude that, prior to the commission of the offenses, appellant terminated his complicity under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. To the contrary, we conclude there was abundant credible testimony that appellant's actions demonstrate that, while he may have stood only a few feet inside the apartment, he actively participated in the aggravated robbery and aggravated burglary inside apartment B-7.
Since there was no evidence warranting an instruction on abandonment, the trial court did not err in failing to include it in its charge to the jury because the charge was not supported by evidence presented in the case. Thus, appellant's sole assignment is not well-taken.
Based on the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY, P.J., DIANE V. GRENDELL, J., concur.